# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Virginia M. Kendall | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 9 C 5803 | **DATE** | 2/10/2011 |
| **CASE TITLE** | Berg vs. Culhane | | |

**DOCKET ENTRY TEXT**

Defendant's motion for sanctions is granted in the amount of $3,685.00.

■ [ For further details see text below.]   Docketing to mail notices.

## STATEMENT

   Before the Court is Defendants Officer Thomas Culhane and the Village of Oak Law's ("the Defendants") Motion for Sanctions against Plaintiff Christopher Berg's attorney, Scott T. Kamin ("Kamin"). Pursuant to Federal Rule of Civil Procedure 16(f), the Defendants seek to recover reasonable fees and costs associated with the preparation of the final pretrial order, jury instructions, verdict forms, special interrogatories, communications providing these documents to Kamin, and the fees for preparing this Motion. The Defendants assert that sanctions are warranted in this case because Kamin failed to work with the Defendants' attorney, Brandon K. Lemley ("Lemley") to draft and file a joint final pretrial order. The Court agrees and grants sanctions against Kamin in the amount of $3,685.00.

   On July 29, 2010, the Court set a trial date and a schedule for pretrial filings. Specifically, the Court ordered the parties to submit their joint final pretrial order by August 16, 2010. Knowing that the Local Rules place the burden on the plaintiff to draft the joint final pretrial order, over the course of the next two weeks, Lemley repeatedly asked Kamin when he was planning on completing his draft pretrial order. Kamin responded that he would supply Lemley with a draft before leaving for a long-scheduled vacation with his children on August 6, 2010. Having still not seen a draft of the final pretrial order from Kamin, Lemley began to prepare his own draft on August 10, 2010. With no input from Kamin, Lemley also prepared jury instructions, verdict forms, and special interrogatories. On the morning of August 16, 2010, the date the joint final pretrial order was due, Lemley still had not received an initial draft from Kamin. That afternoon, in a string of emails exchanged between the two attorneys, Kamin indicated that he planned to finalize the draft order by 6:00 p.m., and that he would submit it electronically prior to the midnight deadline. Lemley responded to explain that he had already filed the pretrial order he had prepared. On August 20, 2010, the Court struck the parties' individually-filed final pretrial orders and ordered the parties to prepare and file a joint order.

   Pursuant to Local Rule 16.1, this Court has adopted a standing order that establishes pretrial procedure.

## STATEMENT

According to the standing order, "[i]t is the obligation of counsel for plaintiff to prepare . . . a draft Order for submission to opposing counsel. Included in plaintiff's obligation for preparation of the Order is submission of it to opposing counsel in ample time for revision and timely filing." Standing Order Establishing Pretrial Procedure § 6(c). The standing order calls for "[f]ull cooperation and assistance of all other counsel . . . to fulfill both the substance and spirit of this Standing Order." *Id*. Federal Rule of Civil Procedure 16(f)(1)(C) allows the Court, on a motion or on its own, to sanction a party for failing to obey a scheduling or other pretrial order. Specifically, the Rule provides that "the court must order the party, its attorney, or both to pay the reasonable expenses—including attorney's fees—incurred because of any noncompliance with this rule, unless the noncompliance was substantially justified or other circumstances make an award of expenses unjust."

Here, Kamin violated this Court's standing order without substantial justification. As plaintiff's counsel, Kamin bore the burden of preparing an initial draft of the final pretrial order and had the responsibility to allow Defense counsel to review the order and make any necessary changes or edits. The process of preparing a final pretrial order is intended to be collaborative. Nevertheless, Kamin failed to make any arrangements to ensure that the order was developed jointly. Instead, he delayed any work on the order until an unreasonably late hour. This failure on the part of Kamin constitutes "noncompliance" with Rule 16. In light of such a failure to obey, the Rule requires that the Court issue sanctions unless the noncompliance was justified, or an award of expenses is unjust. *Id*.

Kamin offers his long-planned family vacation as an explanation for his delay and notes that Lemley had been informed of the vacation dates. This explanation does not justify the unreasonable delay in preparing the final pretrial order, nor does it persuade the Court that the issuance of sanctions would be "unjust." Kamin had the opportunity to recommend a different due date, or, alternatively, to schedule his work on the order during the six days before he left on his vacation. Given Kamin's unjustified delay in preparing the final pretrial order, the Court finds that the Defendants should be awarded attorney's fees to compensate them for Lemley's preparation of the final pretrial order, jury instructions, verdict forms, and special interrogatories, as well as for the time spent communicating with Kamin and preparing the Motion for Sanctions at issue here.

Having determined that sanctions are appropriate in this case, the Court moves to the question of whether the fees requested by the Defendants are reasonable. When calculating attorney's fee awards, the Court relies primarily on the "lodestar" method, which begins with the determination of the number of hours reasonably expended multiplied by a reasonable hourly rate. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983); *People Who Care v. Rockford Bd. of Ed., School Dist. No. 205*, 90 F.3d 1307, 1310 (7th Cir. 1996). Kamin does not contest the reasonableness of the eleven hours Lemley spent preparing the pretrial order and other documents. Therefore, the only remaining issue is whether Lemley's hourly rate is reasonable.

The reasonable hourly rate is considered equal to the "prevailing market rates in the relevant community." *Blum v. Stenson*, 465 U.S. 886, 895 (1984). In calculating the reasonable market rate, "the burden is on the fee applicant to produce satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates are in line with those prevailing in the community." *Blum*, 465 U.S. at 896 n. 11. After a fee applicant has produced satisfactory evidence of the reasonable hourly rate, the burden shifts to the party opposing the award of attorney's fees to present evidence indicating that the requested rate is unreasonable. *Connolly v. Nat'l Sch. Bus Serv., Inc.*, 177 F.3d 593, 596 (7th Cir.1999).

Lemley's law firm has a fixed-fee agreement with the Village of Oak Lawn, under which the Village pays a flat monthly rate in exchange for any legal services required during the month. Because he has no true billing rate for his work for the Village, Lemley relies on the Laffey Matrix to establish his hourly rate. The Laffey

| STATEMENT |
|---|

Matrix is prepared annually by the United States Attorney's Office, and is intended to estimate reasonable attorney's fees. *See* Laffey Matrix 2003-2010, U.S. Attorney's Office, http://www.justice.gov/usao/dc/Divisions/Civil_Division/Laffey_Matrix_8.html (last visited February 3, 2011). According to the Matrix, the market hourly rate in 2010 for an attorney in his ninth year of practice, such as Lemley, is $335.00 per hour. *Id*. The Court finds that, given the fixed-fee system in place here, the Laffey Matrix constitutes "satisfactory evidence" of the reasonable market rate. *See*, *e.g.*, *Hadnott v. City of Chicago*, No. 07 C 6754, 2010 WL 1499473 at *6 (N.D. Ill. April 12, 2010) (Schenkier, M.J.) (collecting cases and stating that "[a]lthough the Seventh Circuit has not addressed the utility of the Laffey Matrix, numerous judges in this district have considered the Laffey Matrix as at least one factor in determining the reasonableness of hourly rates sought"); *Lopez v. City of Chicago*, No. 01 C 1823, 2007 WL 4162805 at *8 (N.D. Ill. Nov. 20, 2007) (Bucklo, J.) (considering the Laffey Matrix, among other evidence, to establish a reasonable rate and noting that the opposing party failed to adequately counter such evidence).

The burden thus shifts to Kamin to show why a "lower rate is essential." *Connolly*, 177 F.3d at 596. Kamin has not met that burden. Kamin's only objection to the Matrix is that it was initially established with reference to the Washington, D.C. legal market, as opposed to the Chicago market. The Chicago market, however, may actually be *more* expensive than the Washington, D.C. market, resulting in an upward adjustment of reasonable rates, which Lemley has not requested in this case. *See*, *e.g.*, *Trans Union Privacy Litig.*, No. 00 C 4729, 2009 WL 4799954 at *19 and n. 35 (N.D. Ill Dec. 9, 2009) (Gettleman, J.) (adjusting the Laffey Matrix figure upward by 1.1%); *Schultz v. City of Burbank*, No. 06 C 5646, 2007 WL 1099479 at *2 (N.D. Ill. Apr. 10, 2007) (Soat Brown, M.J.) (adding 4% to the figure provided by the Laffey Matrix). Because Kamin has failed to establish that the requested attorney's fees are unreasonable, the Court grants the Defendants' Motion for Rule 16(f) Sanctions, and awards the Defendants the $3,685.00 requested (eleven hours multiplied by $335.00 per hour).